# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PATRICK ERICKSON,**

    Petitioner,

    v.                                                      Case No. 15-CV-681

**RANDY HEPP,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

Patrick Erickson, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Erickson was convicted of armed robbery and receiving stolen property. He was sentenced to twenty years of initial confinement followed by ten years of extended supervision. Erickson alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Erickson was charged in Marinette County Case No. 2009CF131 with burglary, felony theft, and criminal damage to property arising out of a July 4, 2009 break-in at a home in Peshtigo, Wisconsin. (*State v. Erickson*, Appeal Nos. 2012AP2749, 2012AP2750 (Wis. Ct. App. Mar. 25, 2013), Docket # 1-1 at 36.) Erickson was charged in Marinette County Case No. 2009CF111 with armed robberies of two Marinette businesses. (*Id.*) Victims and witnesses of both armed robberies told police the perpetrator brandished a gun. (*Id.*) Erickson made his initial appearance with Attorney Edward Burke, Jr. (*Id.*) The

preliminary hearing in both cases was scheduled for February 3, 2010. (*Id.*) At this hearing, which ultimately resulted in waiver of the proceedings, Judge Timothy Duket disclosed that the county clerk was the mother of one of the robbery victims. (*Id.*) The judge stated as follows:

> As I understand it, and I haven't studied these complaints very well, Kathy Brandt is in the courtroom, and she is a long-term friend, and I think she's the mother of one of the victims in this case. Talk to/her on occasion, send her emails and things like that. I don't think that matters one bit to me. I'm not going to treat the case any differently than if it was somebody else's daughter, but I thought that I should disclose that on the record, so if there's any problems, I can be subbed against or asked to recuse or whatever. Mr. Burke can have more time, if he needs to discuss that with Mr. Erickson.

(*Id.*) Attorney Burke did not request more time or ask for substitution or recusal. (*Id.*) Erickson pleaded not guilty to all charges. (*Id.* at 37.) Attorney Burke was relieved at Erickson's request on May 18, 2010 and Attorney Leonard Kachinsky was appointed by the State Public Defender. (*Id.*) At a June status conference, Judge Duket made the same disclosure to Attorney Kachinsky that he made to Attorney Burke:

> Mr. Kachinsky, I made this record with Mr. Burke, and I'll make it with you again at this time regarding somebody that works at the courthouse here. Her daughter was the alleged victim of the gas station robbery. Her name is Kathy Brandt. She is the county clerk, and I deal with her on a number of different things, like elections and marriages, and I send her emails, and you know, we see each other in the courthouse.
>
> So I said with Mr. Burke on board that I didn't have a problem with it. I'm confident I can be fair and neutral, and if there were a conviction, I wouldn't be sentencing any different than if it was some teacher I don't know at Marinette High School who had a daughter that was working at the gas station at the time. . . . [T]hat's something I want to make a record on so you're aware of it.

(*Id.*) The judge was not asked to recuse himself, nor was substitution requested. (*Id.*) Pursuant to a global plea agreement, Erickson pleaded no contest to one count of armed robbery and an amended charge in Case No. 2009CF131 of misdemeanor receiving stolen property. (*Id.*) The remaining counts were dismissed and read in. (*Id.*) The State agreed to recommend a twenty year sentence for armed robbery consisting of twelve years of initial confinement and eight years of extended supervision, with a concurrent sentence for receiving stolen property. (*Id.*) The State also agreed not to charge Erickson with attempted uttering of a forged writing, which arose out of events at Stephenson National Bank on July 8, 2009. (*Id.*)

At the plea hearing, the court discussed the elements of armed robbery with Erickson. Referring to Wis JI-CRIMINAL 1480 (2009), the court described the "dangerous weapon" component of the crime as follows:

> The fifth element is at the time of the [robbery] the defendant used or threatened to use a dangerous weapon. A dangerous weapon is any firearm, whether loaded or not, any device designed as a weapon and capable of producing death or great bodily harm, any device or instrumentality which in the manner it is used or intended to be used is calculated or likely to produce death or great bodily harm.

(*Id.* at 38.) The court then went on to ask counsel "[i]n this case we're talking firearm, aren't we?" to which both counsel responded "Yes." (Answer, Exh. 11 Transcript of Aug. 6, 2010 Plea Hearing, Docket # 10-11 at 19.) The parties agreed the complaint would be used as the factual basis for the plea. (Docket # 1-1 at 38.) Erickson stated that he had reviewed the elements of armed robbery, understood those elements, and did not have any questions. (*Id.*)

3

At sentencing, the prosecutor revealed that the gun used in the robberies was not a firearm, but a BB gun. (*Id.*) Out of a possible forty year maximum sentence on the armed robbery conviction, Erickson was sentenced to thirty years of imprisonment, consisting of twenty years of initial confinement and ten years of extended supervision. (*Id.*) He was also sentenced to nine months imprisonment for misdemeanor receiving stolen property, concurrent to the armed robbery sentence. (*Id.*)

Erickson filed a motion for postconviction relief, alleging both his attorneys were ineffective and he was not properly advised of the elements of armed robbery during the plea hearing. (*Id.* at 38-39.) Specifically, Erickson argued that Attorneys Burke and Kachinsky performed deficiently by failing to request substitution or recusal of Judge Duket. (*Id.* at 39.) Erickson also argued he was entitled to plea withdrawal because he did not understand whether a BB gun was a "dangerous weapon." (*Id.*) The court held a hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979) on Erickson's motion. Attorney Burke testified that he did not seek Judge Duket's recusal because he believed of the two judges sitting in Marinette County, Judge Duket would be more lenient. (*Id.*) He also testified that he believed Judge Duket would hand down a more lenient sentence to avoid having his impartiality questioned on appeal. (*Id.*)

Attorney Kachinsky testified that he did not seek recusal or substitution of Judge Duket because Judge Duket's relationship was not to the victim, but to a relative of the victim, and Judge Duket indicated that he felt he could be fair and impartial. (*Id.* at 40.) Attorney Kachinsky testified that he did not believe there was a basis to request Judge

Duket's recusal. (*Id.*) Attorney Kachinsky further testified that he believed Judge Duket would be more lenient than the other judge in Marinette County. (*Id.*) Attorney Kachinsky testified that he was not concerned Erickson had used a BB gun during the robberies, because he believed that a BB gun was a "dangerous weapon," in that it could cause "substantially bodily harm, loss of sight, and other sorts of injuries." (*Id.*)

Erickson testified that he was very concerned about Judge Duket's disclosure; however, he testified inconsistently about whether he discussed removing Judge Duket with Attorney Burke. (*Id.*) However, Erickson acknowledged discussing the matter briefly with Attorney Kachinsky, who told him that the other judge might be harsher. (*Id.*) Erickson stated that a BB gun was used in both robberies, and he recalled being concerned at the plea hearing whether a BB gun was a dangerous weapon. (*Id.*) However, Erickson acknowledged that he confirmed his understanding of the offense elements at the plea hearing, declined the court's invitation to ask questions, and signed the plea form, which included Wis JI-CRIMINAL 1480. (*Id.* at 40-41.)

The trial court denied Erickson's post-conviction motion, concluding that his attorneys made reasonable strategic decisions to keep Judge Duket on the case, and discounted any possible prejudice by observing that Judge Duket exceeded the plea recommendation only after careful consideration of many appropriate factors. (*Id.* at 41.) The court also concluded that Erickson was not entitled to plea withdrawal because he agreed to the factual predicate for the charges and had every opportunity during the plea hearing to question the elements or indicate his lack of understanding. (*Id.*)

Erickson appealed the trial court's denial of his post-conviction motion. The court of appeals found that Erickson failed to demonstrate his attorneys performed deficiently by failing to request substitution or recusal of Judge Duket. (*Id.* at 42.) Finding his attorneys did not perform deficiently, the court of appeals did not address prejudice.

The court of appeals further found that Erickson was not entitled to withdraw his plea based on his alleged misunderstanding of the elements of armed robbery. The court of appeals concluded that the distinction between a firearm and a BB gun was immaterial for purposes of his plea because armed robbery requires the "use or threat of use of a dangerous weapon" and a BB gun fits the definition of "dangerous weapon" defined as "any device designed as a weapon and capable of producing death or great bodily harm." (*Id.* at 45.) Thus, the court found Erickson failed to establish manifest injustice arising from any potential confusion about whether a BB gun qualifies as a "dangerous weapon" because "as a matter of law, it does." (*Id.*) Erickson filed a petition for review with the Wisconsin Supreme Court, which was denied on August 4, 2014. (*Id.* at 46.) Erickson filed a petition for writ of habeas corpus in this Court on June 3, 2015. (Docket # 1 at 13.)

**STANDARD OF REVIEW**

Erickson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Erickson raises two grounds for relief in his habeas petition. In ground one, Erickson alleges that his trial counsel was ineffective for failing to request a substitution or recusal of Judge Duket. In ground two, Erickson alleges that his plea should be vacated due to the fact that Judge Duket recited the wrong elements of the crime. I will address each in turn.

    *1.     Ineffective Assistance of Trial Counsel*

Erickson argues that his trial counsel was ineffective for failing to request a substitution or recusal of Judge Duket. (Docket # 1 at 6.) Erickson argues that there was, at least, an appearance of impropriety in his case because: (1) Judge Duket substantially exceeded everyone else's sentencing recommendation; (2) the County Clerk certifies the election results that Judge Duket relies upon to keep his job; (3) Judge Duket has exchanged various work related emails with the County Clerk; (4) Judge Duket referred to the clerk as a "long-term friend"; and (5) Marinette is a small county, which puts the judges and clerk closer than in larger counties. (Petitioner's Br. at 13, Docket # 12.) Erickson argues there was no meaningful discussion between himself and counsel regarding the issue of Judge Duket's recusal. (*Id.*) Erickson argues that he was prejudiced by counsels' actions because

Judge Duket handed down a harsher sentence than he would have given to another defendant so as not to be criticized by his "long-term friend and co-worker." (Petitioner's Reply Br. at 4, Docket # 16.)

Again, Erickson pleaded guilty in Wisconsin state court. "Once a plea of guilty has been entered, non-jurisdictional challenges to the constitutionality of the conviction are waived and only the knowing and voluntary nature of the plea may be attacked." *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir. 1989). Thus, a guilty plea generally closes the door to claims of constitutional error. There is an exception, however, for instances where one's plea is rendered involuntary due to the ineffective assistance of counsel. *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014). A habeas petitioner "cannot just assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim"; rather, he "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013).

Erickson does not allege that any ineffective assistance of counsel led him to plead guilty. Rather, he alleges that he was prejudiced by counsel's failure to object to Judge Duket because Judge Duket handed down a harsher sentence than he would have given to another defendant so as not to be criticized by his "long-term friend and co-worker." In *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985), the Supreme Court stated that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." However, the "prejudice" requirement "focuses on whether

9

counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Because Erickson does not allege that "the plea agreement was the product of ineffective assistance of counsel or tainted by ineffective assistance of counsel," *see Hurlow*, 726 F.3d at 967 (internal quotation and citations omitted), he cannot show prejudice under *Hill*—that but for counsels' errors, he would not have pleaded guilty and would have insisted on going to trial. Again, "a 'voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.'" *Evans v. Huibregtse*, No. 09-C-493, 2012 WL 3648098, at *1 (E.D. Wis. Aug. 22, 2012) (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)).

Erickson does not argue that but for counsels' failure to request recusal or substitution of Judge Duket, he would not have pleaded guilty and would have insisted on going to trial. Rather, he simply alleges a constitutional violation that preceded his decision to plead guilty. There is no connection between the alleged error and his decision to plead guilty. Thus, Erickson's guilty plea waived his claim of ineffective assistance of trial counsel and he is not entitled to habeas relief on this ground.

*2.    Knowing and Voluntary Plea*

Erickson argues that his plea should be vacated because Judge Duket recited the wrong elements of the crime. (Docket # 1 at 7.) As stated earlier, at the plea hearing, in reciting the elements of armed robbery by use of a dangerous weapon, the trial court stated as follows:

> The fifth element is at the time of the [robbery] the defendant used or threatened to use a dangerous weapon. A dangerous weapon is any firearm, whether loaded or not, any device designed as a weapon and capable of producing death or great bodily harm, any device or instrumentality which in the manner it is used or intended to be used is calculated or likely to produce death or great bodily harm.

(Docket # 10-11 at 19.) The court then asked counsel "[i]n this case we're talking firearm, aren't we?" to which both counsel responded "Yes." (*Id.*) Erickson argues that because the alleged "dangerous weapon" in his case was not, in fact, a firearm, but was a BB gun, his plea was entered based on a material misunderstanding of the elements of the offense and thus was not knowingly and intelligently made. (Petitioner's Br. at 19.)

A plea may be involuntary if the accused has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The court of appeals found that Erickson was not entitled to withdraw his plea because the distinction between a firearm and BB gun was immaterial for purposes of the plea. In *State v. Michelle A.D.*, 181 Wis. 2d 917, 920, 926, 512 N.W.2d 248, 249, 251 (Ct. App. 1994), the Wisconsin Court of Appeals found, as a matter of law, that a BB gun was a dangerous weapon under Wis. Stat. § 939.22(10)'s definition of a "dangerous weapon" as "any device designed as a weapon capable of producing death or

great bodily harm." Because a BB gun fits the definition of "dangerous weapon" as a matter of law, the court of appeals found that Erickson failed to establish a manifest injustice arising from any potential confusion about whether a BB gun qualifies as a "dangerous weapon." (Docket # 1-1 at 45.)

Erickson does not argue that the court of appeals' conclusion was either contrary to, or involved an unreasonable application of, clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented. Rather, he seems to argue that he should have been able to argue to a jury that a BB does not fit the definition of a dangerous weapon. (Petitioner's Br. at 24.) But again, the Wisconsin Court of Appeals has determined, as a matter of law, that a BB gun is a "dangerous weapon" under the statute. Erickson also argues that perhaps Judge Duket was confused about the nature of the weapon and believed a BB gun was a "firearm" and thus gave him a harsher sentence. (Petitioner's Br. at 24; Petitioner's Reply Br. at 5.) While no one disputes that a BB gun is not a "firearm," it is a "dangerous weapon" under Wis. Stat. § 939.22(10). In other words, under the statute, both firearms and BB guns are considered "dangerous weapons." And the record is clear that in reading the fifth element of the offense, the court included the definition of "dangerous weapon," that reads "any device designed as a weapon and capable of producing death or great bodily harm." Again, this includes a BB gun as a matter of law. (Docket # 10-11 at 19.) Thus, Erickson is not entitled to habeas relief on this ground. For these reasons, Erickson's petition for writ of habeas corpus is denied and his case is dismissed.

**CERTIFICATE OF APPEALABILITY**

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When the case is resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Section 2253 mandates that both showings be made before a certificate of appealability is granted. *Id.* at 485. Each component of the § 2253(c) showing is part of a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.*

Jurists of reason would not find it debatable that Erickson is not entitled to habeas relief as to either ground alleged in his petition. Thus, I will deny Erickson a certificate of

13

appealability. Of course, Erickson retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of June, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge